UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: CAROL A. MARCUS-REHTMEYER, ) ) Debtor. ) _____ ) ) MARK A. JACOBS and CHIVALRY CONSULTING, ) INC., ) ) Plaintiffs-Appellants, ) ) vs. ) ) CAROL A. MARCUS-REHTMEYER, ) ) Defendant-Appellee. ) | 13 C 3919 Judge Feinerman Appeal from the U.S. Bankruptcy Court for the Northern District of Illinois 11 A 2079 11 B 26989 |

**MEMORANDUM OPINION AND ORDER**

This is an appeal from decisions of the bankruptcy court in the Chapter 7 proceeding initiated by the debtor, Carol A. Marcus-Rehtmeyer. On March 10, 2010, an Illinois state court entered a $168,331.59 judgment against Rehtmeyer and her company and in favor of Mark A. Jacobs and Chivalry Consulting, Inc. (together, "Plaintiffs"). Doc. 1-9 at 8-16. The judgment was not satisfied, and on October 12, 2010, Plaintiffs issued a Citation to Discover Assets to require Rehtmeyer to disclose her income and assets. Doc. 1-5 at 39-42. Rehtmeyer testified at a citation examination on November 4, 2010. Docs. 1-4; Doc. 1-5 at 1-8, 55-57; Doc. 1-6 at 1-10. Believing that Rehtmeyer had failed to make full disclosure, Plaintiffs filed in state court a motion for a rule to show cause. Doc. 1-9 at 42-50. On June 29, 2011, the day before the show cause hearing was to take place, Rehtmeyer filed her Chapter 7 petition. Doc. 1-8 at 12-48.

Plaintiffs appeared in the bankruptcy court to argue that Rehtmeyer's discharge of her debt to them should be denied under 11 U.S.C. § 727(a)(2)(A) because she had concealed her

1

assets and income during the citation proceedings with the intent to hinder, delay, or defraud them. Doc. 1-3 at 9-16. The allegedly concealed assets and income consisted of Rehtmeyer's ownership interest in a residence in Wheaton, Illinois, stock of Lorac & Cire, Inc., and computer and electronic equipment, and her employment income from SciTech Museum. *Ibid*. On January 14, 2013, the bankruptcy court conducted a trial at which Rehtmeyer, her attorneys Douglas Tibble and G. Alexander McTavish, and Plaintiffs' attorney Renata M. Koleda testified and at which exhibits were admitted. Doc. 6-1 at 10-270.

On January 15, 2013, the bankruptcy court denied Plaintiffs' objection to Rehtmeyer's discharge. Doc. 6-1 at 277-297. With respect to the Wheaton property, the bankruptcy court held that Rehtmeyer's "failure to identify her ownership interest in the Wheaton property at the citation hearing" and "her alleged failure to produce an actual copy of the publicly available deed to that property to plaintiffs [do] not demonstrate concealment of that property or any intent to defraud her creditors." *Id*. at 284-88. With respect to the Lorac & Cire stock, the bankruptcy court held that Rehtmeyer's "misstatement at the citation deposition of her shares of stock in Lorac & Cire and her alleged failure to produce corporate books, records, and documents of Lorac & Cire does not demonstrate concealment of that property or any intent to defraud her creditors." *Id*. at 288-91. With respect to the computer and electronic equipment, the bankruptcy court held that Rehtmeyer's "testimony at trial was consistent with her testimony at the citation to discover assets for Rehtmeyer, Inc." and that she therefore "did not intend to conceal any electronic equipment, desks, or filing cabinet." *Id*. at 294-96. And with respect to the income from SciTech Museum, the bankruptcy court held that Plaintiffs "failed to establish a basis to deny the debtor's discharge under Section727(a)(2)(A) with respect to her statements or

lack of statements or lack of production of documents prior to the bankruptcy filing regarding her employment at Scitech Museum." *Id*. at 291-94.

Plaintiffs filed a post-trial motion seeking relief from the judgment and leave to file a second amended complaint. Doc. 1-7 at 44-49. On April 9, 2013, the bankruptcy court denied the motion. Doc. 1 at 16-17; Doc. 6-1 at 271-276. On April 18, 2013, the bankruptcy court entered a judgment granting Rehtmeyer a discharge in bankruptcy. Doc. 108 at 59.

Plaintiffs have appealed the bankruptcy court's rulings. Doc. 1. This court has appellate jurisdiction under 28 U.S.C. § 158(a)(1), which grants the district courts jurisdiction to hear appeals from final judgments of bankruptcy courts in cases referred under 28 U.S.C. § 157. *See Zedan v. Habash*, 529 F.3d 398, 402 (7th Cir. 2008) ("[T]he test we have utilized to determine finality under § 158(d) is whether an order resolves a discrete dispute that, but for the continuing bankruptcy, would have been a stand-alone suit by or against the trustee. … [T]he final disposition of any adversary proceeding falls within our jurisdiction."); *Fifth Third Bank v. Edgar Cnty. Bank & Trust*, 482 F.3d 904, 905 (7th Cir. 2007) ("A final resolution of any adversary proceeding is appealable, as it is equivalent to a stand-alone lawsuit.").

Plaintiffs' challenges to the bankruptcy judge's rulings fall into three general categories, which are considered in turn.

**I.      The Bankruptcy Court's Ruling that Rehtmeyer Lacked the Intent to Hinder, Delay, or Defraud Plaintiffs by Concealing Her Assets and Income During the Citation Proceedings**

First, Plaintiffs contend that the bankruptcy court erred in holding that Rehtmeyer lacked the requisite intent to hinder, delay, or defraud Plaintiffs within the meaning of § 727(a)(2)(A) when she failed to disclose certain assets and income during the citation proceedings. Doc. 7 at 23-26, 27-31. Section 727(a) states in relevant part that "[t]he court shall grant the debtor a discharge, unless— … (2) the debtor, with intent to hinder, delay, or defraud a creditor … has

3

transferred … or concealed—(A) property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). The party seeking to bar discharge under this provision must prove "two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)." *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002) (internal quotation marks omitted). In considering the bankruptcy court's ruling that Plaintiffs did not meet their burden, this court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *See In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011); *United Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002).

Plaintiffs argue that the bankruptcy court clearly erred in accepting Rehtmeyer's explanation for her failure during the citation examination to disclose her ownership interest in the Wheaton property and the Lorac & Cire shares. The bankruptcy court credited Rehtmeyer's testimony that she had not believed that she owned those assets and therefore had not intended to conceal them. Doc. 6-1 at 285 ("The court finds the debtor's testimony credible and further finds that her failure to identify her ownership in the Wheaton property at the citation hearing was the result of her mistaken belief that her husband alone owned the property."), 290 ("It is apparent from her testimony that she did not understand the effect of the assignment [of the Lorac & Cire shares to her attorney] and precisely what her interest in Lorac & Cire, Inc., was at the time of the citation hearing."). The bankruptcy judge added that two letters sent after the citation examination but during the citation proceedings from Tibble (one of Rehtmeyer's attorneys) put Plaintiffs on "inquiry notice" regarding her ownership of those assets, thus further undermining any suggestion that Rehtmeyer intended to conceal said ownership. *Id.* at 287-288 ("[t]he court finds that Mr. Tibble's testimony and his letter of May 12th[, 2011.] negate any actual intent to

4

hinder, delay, or defraud," given that "[t]he letter itself puts the plaintiffs on at least inquiry notice of the debtor's ownership of the Wheaton property," which "support[s] the debtor's contention that she did not have an intent to conceal her interest in the Wheaton property"), 290-291 (same with respect to Tibble's letter of March 25, 2011, regarding ownership of Lorac & Cire stock).

As an appellate tribunal, this court must give appropriate deference to the bankruptcy judge's credibility findings, as "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985); *see also* Fed. R. Bankr. P. 8013 ("Findings of fact … shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."); *Carnes Co. v. Stone Creek Mech.*, 412 F.3d 845, 848 (7th Cir. 2005) ("We … afford great deference to the trial court's assessment of witness credibility; indeed, we have stated that a trial court's credibility determination can virtually never amount to clear error.") (internal quotation marks omitted). After reviewing the pertinent portions of the record, this court finds that the bankruptcy court's credibility findings in Rehtmeyer's favor and its bottom-line conclusion that she did not subjectively intend to hinder, delay, or defraud Plaintiffs with respect to the Wheaton property and the Lorac & Cire shares, while not the *only* permissible conclusion that a rational factfinder could have drawn, was a permissible conclusion. *See Anderson*, 470 U.S. at 575 ("when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error"); *Matter of Generes*, 69 F.3d 821, 825 (7th Cir.

5

1995) (declining to "disturb the credibility determinations of the bankruptcy court" where the debtor "present[ed] no extrinsic evidence that would undermine the trial court's decision [affirming the bankruptcy court's decision to] choose the [creditor's] version of events over that presented by [the debtor]"); *In re Pearson Bros. Co.*, 787 F.2d 1157, 1162 (7th Cir. 1986) ("the bankruptcy judge's determination … was based upon the conflicting testimony of two witnesses and must be upheld if the testimony accepted by the trier of fact was coherent, facially plausible and uncontradicted by documentary or objective evidence").

Plaintiffs also contend that the bankruptcy court erred in finding that Rehtmeyer did not intend during the citation proceedings to conceal any employment income from SciTech Museum. To support their contention, Plaintiffs argue that: (1) Rehtmeyer's trial testimony that SciTech paid her $13,541.65 in 2010 is consistent with the $13,541.65 amount listed as 2010 income in her bankruptcy petition; (2) Rehtmeyer did not produce any documents at the citation examination reflecting her SciTech income; (3) Rehtmeyer did not provide Plaintiffs with a copy of her 2010 tax returns or her 2010 W-2 form; and (4) Rehtmeyer did not disclose or produce documents relating to her Old Second Bank account during the citation examination. Doc. 7 at 27-31.

The bankruptcy judge rejected Plaintiffs' submission, reasoning as follows:

> The plaintiffs allege in the amended complaint that based on certain information provided in her bankruptcy schedules, the debtor concealed during the citation examination and after, that she was employed by Scitech Museum in 2010 by failing to produce any documents relating thereto. Specifically the plaintiffs take issue with the debtor's statement on her Schedule I of the bankruptcy proceedings that she has been employed as the executive director of Scitech Museum since April 1, 2011, even though her statement of financial affairs lists income in the sum of $13,541.65 from Scitech Museum for the year 2010. … It is undisputed that the debtor was not asked any questions at the citation examination on November 4, 2010, regarding her employment. However, the citation to discover assets and the rider thereto did require the debtor to provide information concerning the

> property or income of the debtor, including her state and federal income tax returns, W-2 forms, and 1099 forms. …
>
> It is undisputed that the debtor did comply with the citation to the extent she produced her income tax returns for 2006 through 2009. … However, it is also undisputed that at the citation proceedings, she did not produce any pay advices or any agreement respecting her employment with Scitech Museum. At trial, the debtor testified that she became acting director of Scitech Museum sometime in 2010. It was not clear from the debtor's testimony precisely when this position began, and it was not clear how or when she was paid for her services. The debtor did testify that Scitech had agreed to pay her a salary of $50,000 annually from the museum. However, she also testified that Scitech did not pay her all of her compensation for 2010, did not pay her bi-weekly as it was supposed to have done, and only paid her when it had the funds to do so. She further testified that she did not recall when those payments were made and the plaintiffs produced no evidence establishing that any payments were made prior to debtor's November 4, 2010, citation deposition. The debtor also testified that with respect to her work at Scitech Museum in 2010, she did not recall receiving a W-2 or 1099 form for income tax purposes.
>
> The court finds that the plaintiffs have not met their burden of proving by a preponderance of the evidence that the debtor intended to conceal her employment with Scitech during the citation proceedings. It's undisputed that the subsequent citation examination on November 4, 2010, the debtor continued to provide documents to the plaintiffs, including tax returns, in an effort to comply with plaintiffs' demands made in connection with the citation proceeding.

Doc. 6-1 at 291-294.

Again, a reasonable factfinder could have concluded that Rehtmeyer intended to conceal her SciTech income during the citation proceedings. However, "[t]he clearly erroneous standard … does not permit a trier of fact to be overturned simply because [the reviewing court] is convinced it would have decided the case differently," and "where two permissible conclusions can be drawn, the factfinder's choice cannot be clearly erroneous." *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989) (internal quotation marks omitted). Upon reviewing the record and giving appropriate deference to the bankruptcy judge's credibility determinations, the court finds that the bankruptcy court reached a permissible conclusion.

The evidence did not compel the bankruptcy court to conclude that Rehtmeyer received income from SciTech before her citation examination on November 4, 2010. Rehtmeyer testified at the bankruptcy trial that "the museum couldn't always afford to pay [the $50,000 salary], so they paid as they could." Doc. 6-1 at 59. When asked, "So, isn't it a fact, Mrs. Rehtmeyer, that you received checks from SciTech before you appeared for your citation, and you deposited them into a new checking account," Rehtmeyer replied, "I don't know when I was first paid. As I said, I was paid when SciTech could afford to pay, so I'm not sure." *Id*. at 72. Rehtmeyer also testified that she had not received a 1099 or W-2 form from SciTech at the time of the citation examination, which makes sense given that she began working for SciTech in 2010 and thus would not have received those documents until 2011, after the examination occurred in November 2010. *Id*. at 122-23. Rehtmeyer admitted that she had opened a new checking account at Old Second Bank, but when asked whether she had that checking account at the time of the citation examination, she responded, "I do not have any checking accounts at the time of the … Citation." *Id*. at 72-73. Moreover, the fact that Rehtmeyer produced her tax returns from 2006 to 2009 suggests that she had intended to be forthcoming in producing financial documents. Given all this, the bankruptcy court could reasonably conclude that Rehtmeyer did not intend to conceal any SciTech income.

## II.     The Bankruptcy Court's Evidentiary Rulings

Plaintiffs also argue that the bankruptcy court erroneously admitted hearsay testimony during the trial. Doc. 7 at 23, 26-27. The bankruptcy court's evidentiary rulings are reviewed deferentially for abuse of discretion. *See First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 776-77 (7th Cir. 2013). "In order to prevail, [Plaintiffs] must show both that the bankruptcy court abused its discretion [in overruling their evidentiary objections], and that the ruling worked to

[their] actual and substantial prejudice." *In re Salem*, 465 F.3d 767, 778 (7th Cir. 2006) (internal quotation marks omitted). Adding to Plaintiffs' burden is the principle that, "[i]n 'bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions.'" *United States v. Reed*, __ F.3d __, 2014 WL 902522, at *5 (7th Cir. Mar. 10, 2014) (quoting *Harris v. Rivera*, 454 U.S. 339, 346-47 (1981)); *see also Placek v. Illinois*, 546 F.2d 1298, 1304-05 (7th Cir. 1976) ("Indeed, even when we have held that evidence was improperly admitted in a bench trial, we have refused to presume that the trial judge considered it in reaching his verdict."). Moreover, where evidence is admitted for a limited purpose and "the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose." *Williams v. Illinois*, 132 S. Ct. 2221, 2235 (2012).

*First*, Plaintiffs contend that the bankruptcy court abuse its discretion in admitting Rehtmeyer's testimony that "the museum couldn't always afford to pay [the $50,000 salary]." Doc. 7 at 26-27. The pertinent portion of the transcript reads as follows:

| [Plaintiffs' lawyer]: | Now, what was your rate of compensation as executive director? |
| --- | --- |
| [Rehtmeyer]: | That's a difficult answer. It was supposed to be based on a salary of $50,000, but the museum couldn't always afford to pay that, so they paid as they could. |
| [Plaintiffs' lawyer]: | Objection. Move to strike everything in addition to 50,000. |
| THE COURT: | Can you ask the question again for my benefit to make sure I understand exactly what was asked. |
| [Plaintiffs' lawyer]: | … Your rate of compensation as director in 2010 was 50,000 per year; isn't that right? |
| THE COURT: | If that's the question, I'm going to deny the motion to strike. And I think there's an ambiguity in the use of the word rate of compensation. That could apply to rate |

9

> actually paid, it could be rate scheduled to be paid or—she gave an explanation.

Doc. 6-1 at 59-60.

Because Plaintiffs never specified that their objection was on hearsay grounds, they forfeited their ability to press a hearsay argument on appeal. "To preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection." *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (internal quotation marks omitted). Significant here, "not just any objection will save an issue for review—neither a general objection to the evidence nor a specific objection on a ground other than the one advanced on appeal is enough." *Ibid.*; *see also Freeland v. Enodis Corp.*, 540 F.3d 721, 738 (7th Cir. 2008) (applying this principle in the context of a bankruptcy appeal).

In any event, on the merits, Plaintiffs provide no basis to conclude that the bankruptcy court admitted the testimony in question for the truth of the matter asserted—namely, for the proposition that the museum could not afford to pay Rehtmeyer's salary. An out-of-court statement "not offered to prove the truth of the matter asserted in the statement" is not hearsay. Fed. R. Evid. 801(c)(2); *see Jordan v. Binns*, 712 F.3d 1123, 1126-27 (7th Cir. 2013). Without a showing by Plaintiffs to the contrary, this court will presume, as it must, *see Williams*, 132 S. Ct. at 2235; *Reed*, 2014 WL 902522, at *5, that the bankruptcy court considered Rehtmeyer's testimony that SciTech Museum "couldn't always afford to pay" her salary only in relation to whether SciTech had paid her anything as of the date of her citation examination and thus to whether she had intended to conceal any SciTech income from Plaintiffs. *See United States v. Harper*, 463 F.3d 663, 668 (7th Cir. 2006) (holding that a letter was properly admitted because it was not offered to prove the truth of the matter asserted but instead "to prove its effect on [the defendant]—that its receipt … was strong circumstantial evidence of his guilty conscience").

*Second*, Plaintiffs contend that the bankruptcy court erroneously overruled their objection to Rehtmeyer's testimony that Chase Bank refused to speak to her regarding the refinancing of the Wheaton residence. Doc. 7 at 27. The pertinent portion of the transcript reads as follows:

| | |
|---|---|
| [Rehtmeyer's lawyer]: | … When you were asked if you owned any real estate by [Plaintiffs' lawyer] in the citation proceeding, how did you answer that question? |
| [Rehtmeyer]: | I said I did not. |
| [Rehtmeyer's lawyer]: | Okay. And why did you answer that question in that manner? |
| [Rehtmeyer]: | Because we had refinanced our house, and the mortgage was only signed in my husband's name, or so I thought. So I thought that I did not have ownership to the house because only he signed it. When I talked with Chase Bank, they refused to talk to me saying that I was not a signer. So I— |
| [Plaintiffs' lawyer]: | Objection and rule to strike, move to strike. |
| * * * | |
| [Plaintiffs' lawyer]: | The objection is referencing things that are hearsay and not a part of this record. Refinancing efforts, who signed a mortgage during—these are all based on hearsay. And the testimony is not—doesn't— |
| [Rehtmeyer's lawyer]: | Your Honor, I asked her why she gave me the answer she did, whether, in fact, she refinanced. I'm asking her belief, which goes to her intent, which is the main issue in this case. |
| THE COURT: | I agree. I will overrule the objection. |

Doc. 6-1 at 112-113. The testimony to which Plaintiffs object—that Chase Bank refused to speak to Rehtmeyer about the mortgage because she was not a signer—was not admitted for the truth of the matter asserted. As reflected by the court's agreement with Rehtmeyer's counsel's argument, the testimony was admitted only for the impact that Chase Bank's statement had in

11

leading Rehtmeyer to believe that she was not an owner of the Wheaton property. *See Martinez v. McCaughtry*, 951 F.2d 130, 133 (7th Cir. 1991) ("When a person's knowledge or state of mind is at issue, evidence that he has heard or read a statement may be relevant, and lies beyond reach of a hearsay objection.") (internal quotation marks omitted).

*Third*, Plaintiffs contend that the bankruptcy court improperly admitted hearsay testimony from Rehtmeyer regarding what Tibble had told her about the Wheaton property and the Lorac & Cire stock. Doc. 7 at 27. Two pertinent portions of the transcript read as follows:

| | |
|---|---|
| [Rehtmeyer's lawyer]: | Subsequent to your citation examination on November 4th, did you have an occasion to talk with Mr. Tibble about ownership of the home? |
| [Rehtmeyer]: | Yes. |

\* \* \*

| | |
|---|---|
| [Rehtmeyer's lawyer]: | Okay. And who was present during that conversation? |
| [Rehtmeyer]: | Just Doug Tibble and myself. |
| [Rehtmeyer's lawyer]: | Ok. And what did he say to you and what did you say to him? |
| [Plaintiffs' lawyer]: | Objection. Hearsay as to Mr. Tibble. |
| THE COURT: | I'm going to let her testify. Go ahead. |

\* \* \*

| | |
|---|---|
| [Rehtmeyer]: | He asked me was I sure about the ownership of the mortgage, and I thought that I was. And he said that he would look into it and give the record so we were clear. |

\* \* \*

| | |
|---|---|
| [Rehtmeyer]: | Doug Tibble suggested that we look into it. |
| [Rehtmeyer's lawyer]: | Okay. And then he told—what did he tell you regarding how the residence was titled? |

| | |
|---|---|
| [Rehtmeyer]: | He said the ownership was held— |
| [Plaintiffs' lawyer]: | Objection. This is hearsay. |

\* \* \*

| | |
|---|---|
| THE COURT: | I'm going to overrule. Go ahead. |

\* \* \*

| | |
|---|---|
| [Rehtmeyer]: | He said the ownership was held in the entirety, so both parties would therefore be owners. |

\* \* \*

> He said he would obtain a copy [of the deed] for clarification and send it to the plaintiffs' attorney.

Doc. 6-1 at 116-117, 213-214. Plaintiffs' objection was overruled without explanation, but there is no indication that the bankruptcy court admitted the testimony for the truth of Tibble's out-of-court statements. In fact, as noted above, precedent requires the court to presume that the bankruptcy court considered the testimony only for a proper purpose—to shed light on whether Rehtmeyer believed at her citation examination that she did not own the Wheaton property, on her willingness to cooperate with her lawyer to rectify her misstatement, and therefore on whether she had intended to mislead Plaintiffs about her assets. *See Williams*, 132 S. Ct. at 2235.

In the other portion of the transcript cited by Plaintiffs, Rehtmeyer testified: "Mr. Tibble said he wasn't sure that [Rehtmeyer correctly testified at the citation examination regarding her divestiture of Lorac & Cire stock] … and that he would rectify it. … I said whatever is the correct response is what I intend to give, to give the understanding as best as I understood it. I thought giving stock meant giving the company up." Doc. 6-1 at 120-121. The trouble with Plaintiffs' argument is that they did not object to this testimony on hearsay or any other ground, thus forfeiting their argument on appeal. *See Freeland*, 540 F.3d at 738; *Linwood*, 142 F.3d at

13

422. In any event, as with the other two passages, the court will presume that the bankruptcy court considered the Rehtmeyer-Tibble conversation only as it touched on whether Rehtmeyer believed at the time of her citation examination that she had divested herself of Lorac & Cire stock and thus on whether Rehtmeyer had intended to hinder, delay, or defraud Plaintiffs within the meaning of § 727(a)(2)(A).

### III. Plaintiffs' Post-Trial Motion

Plaintiffs' post-trial motion asked the court to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment" pursuant Federal Rule of Civil Procedure 59(a)(2), and/or for the court "to alter or amend a judgment" under Rule 59(e). Doc. 1-7 at 44-49. Plaintiffs maintained that this relief was warranted "[i]n light of the newly discovered evidence [at trial] relating to [Rehtmeyer's] Old Second Bank checking account (which according to [Rehtmeyer's] trial testimony, must have been opened during the pendency of the Citation [proceedings])." *Id*. at 48. Plaintiffs also requested leave to amend their complaint to add allegations "relating to [Rehtmeyer's] concealment of her Old Second Bank checking account." *Ibid*. The bankruptcy court denied the motion on the ground, among others, that post-trial affidavits from Rehtmeyer and an Old Second Bank employee, Barbara Collette, Doc. 1-7 at 77-80, indisputably showed that Rehtmeyer did not open the Old Second Bank account until July 28, 2011, a month after she filed her bankruptcy petition and thus after the close of the citation proceedings, making it impossible for Rehtmeyer to have concealed that account during those proceedings. Doc. 6-1 at 274-276.

Plaintiffs contend on appeal that the bankruptcy court erred in allowing Rehtmeyer to reopen the proofs regarding the Old Second Bank account with affidavits that, according to

14

Plaintiffs, directly contradicted her trial testimony. Doc. 7 at 30-34. The court will review the bankruptcy court's denial of Plaintiffs' post-trial motion under the abuse of discretion standard. *See LB Credit Corp v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). This court affirms the bankruptcy court's ruling on two grounds.

First, contrary to Plaintiffs' submission, the post-trial affidavits did not contradict Rehtmeyer's trial testimony regarding the Old Second Bank account. The pertinent portion of the trial transcript reads as follows:

| | |
|---|---|
| [Plaintiffs' lawyer]: | Where was the new checking account that you opened? |
| [Rehtmeyer]: | Old Second Bank. |
| [Plaintiffs' lawyer]: | Old? |
| [Rehtmeyer]: | Old Second Bank. |
| [Plaintiffs' lawyer]: | And you had that checking account when you appeared for you[r] citation on November 4, 2010; isn't that a fact? |
| [Rehtmeyer]: | I don't know. |
| [Plaintiffs' lawyer]: | And at your citation proceeding, you denied having any checking accounts; isn't that right? |
| [Rehtmeyer]: | I do not have any checking accounts at the time of the deposition or the—I forgot what it's called. Citation. |
| [Plaintiffs' lawyer]: | That's what you said during the citation; isn't that right? |
| [Rehtmeyer]: | That was correct. |

Doc. 6-1 at 72-73. Rehtmeyer thus did not admit at trial that she had an Old Second Bank account at the time of the citation examination. To the contrary, Rehtmeyer testified that she did not know whether she had the Old Second Bank account at that time. This is not inconsistent with the affidavits, which averred that Rehtmeyer did not open her Old Second Bank account until after the citation proceedings concluded.

Second, even if the affidavits were somehow inconsistent with Rehtmeyer's trial testimony, the bankruptcy court did not abuse its discretion in denying Plaintiffs' post-trial motion based on the incontestable evidence presented in Collette's affidavit. Doc. 1-7 at 79-81. Collette was "familiar with the records maintained by the bank in connection with customer accounts and the records created when an account is opened," and had "personal knowledge of the bank's procedures for creating and maintaining these records." *Id*. at 79-80. Collette ran a thorough electronic search of bank records and attached a document showing that Rehtmeyer's only account with Old Second Bank was opened on July 28, 2011, a month after her bankruptcy petition was filed. *Id*. at 80-81. The bankruptcy court cannot be faulted for relying on this indisputable evidence in concluding that, regardless of Rehtmeyer's testimony at trial, she did not have an account with Old Second Bank during the pendency of the citation proceedings, and thus could not have concealed that account from Plaintiffs, rendering futile any further proceedings in the bankruptcy case regarding that account.

\* \* \*

For the foregoing reasons, this court affirms the bankruptcy court's denial of Plaintiffs' objection to Rehtmeyer's discharge in bankruptcy under § 727(a)(2)(A) and its denial of Plaintiffs' post-trial motion.

March 24, 2014

United States District Judge